IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRENTON EUGENE SINYARD, | § | |
| #2155704, | § | |
|            Petitioner, | § | |
| | § | |
| v. | § | No. 3:21-cv-1518-N (BT) |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
|            Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Trenton Eugene Sinyard, a Texas prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. The District Court referred the petition to the United States magistrate judge for findings and a recommendation, pursuant to 28 U.S.C. 636(b) and a standing order of reference. For the following reasons, the Court should **DENY** Sinyard's petition.

## Background

On June 2, 2015,

Jennifer Lucas was working at home when around noon, someone rang her front doorbell. She did not answer it. A moment later, the doorbell rang again. When she investigated, she saw the shadow of someone walking by the front windows where there were flower beds. She went to the French doors at the back of her house and closed the blinds so no one would see her. Moments later, she heard someone "trying" the back French door handle and pushing on the door. She retrieved her handgun from a safe and called the Sheriff's Department. While she was on the phone, she heard a loud bang, the door flung open, and a person stumbled in through the doorway. Lucas did not recognize the intruder and started shooting at him.

1

> When deputies arrived, they followed a trail of blood from Lucas's back door to her gate. A canine unit followed a scent then to the house next door, first to a separate "mother-in-law" house at the back. There was blood on the door and below a hamper inside. Believing the intruder was hiding in the main house, deputies called on the fire department to use heat-sensing technology and found Sinyard hiding in a wall. He had used a "scuttle hole" in the attic to reach the area where he was hiding. When he was removed from the area, he was wearing shorts; but a pair of bloody jeans and a bloody t-shirt were found in the area. He had a wound to the back of his head and to his left back/shoulder area.

*Sinyard v. State*, No. 10-17-00263-CR, slip op. at 2 (Tex. App.—Waco 2019, pet. ref'd); ECF No. 11-3 at 2.

Sinyard was charged by indictment with burglary of a habitation, with one prior felony conviction alleged for enhancement purposes. ECF No. 11-34 at 28. An Ellis County jury found Sinyard guilty as charged and sentenced him to ninety-nine years' imprisonment. *State v. Sinyard*, Cause No. 40346CR (40th Judicial Dist. Court, Ellis Cnty., August 18, 2017). The Tenth Court of Appeals of Texas affirmed the conviction. ECF No. 11-3. The Texas Court of Criminal Appeals (CCA) then refused Sinyard's petition for discretionary review (PDR). *Sinyard v. State*, PD-0273-19 (Tex. Crim. App. 2019); ECF No. 11-18.

Sinyard filed a state application for a writ of habeas corpus, which the CCA denied without a written order on the findings of the trial court without a hearing and on the court's independent review of the record. *Ex parte Sinyard*, WR-80,335-02 (Tex. Crim. App. May 19, 2021); ECF No. 11-33.

Sinyard then filed a federal habeas application pursuant to 28 U.S.C. § 2254 in this Court, in which he argues that:

    (1)     The evidence was legally insufficient to support his conviction;

    (2)     The victim testified falsely at trial;

    (3)     The trial court erred by allowing evidence of his prior convictions during the guilt/innocence phase;

    (4)     His trial counsel was ineffective for failing to:

        a.  Inform him of a plea offer;

        b.  Object to the disproportionate sentence;

        c.  Object to the admissibility of clothing found at his residence;

        d.  Object to the prosecution's arguments to the jury;

        e.  Object that the prosecution was vindicative; and

        f.  Object to the admissibility of his prior convictions.

        His appellate counsel was ineffective for failing to raise the following arguments:

        g.  There was no evidence to support the verdict;

        h.  The prosecutor's actions constituted vindictive or selective prosecution; and

        i.  Physical evidence introduced during trial—namely the victim's damaged door—had been tampered with.

ECF No. 3 at 8-12. The State filed a response to Sinyard's application. ECF No. 12.

Succinctly stated, the State argues that some of Sinyard's claims are procedurally

defaulted and the rest are meritless. Sinyard did not file a reply.

## Legal Standards and Analysis

A. <u>Some of Sinyard's claims are procedurally defaulted.</u>

The State claims that Sinyard failed to exhaust his claims that (1) the victim falsely testified that the intruder stumbled through the doorway into the house (Claim 2); (2) his trial counsel was ineffective for failing to inform him of a fifteen-year plea offer (Claim 4a); and (3) his appellate counsel was ineffective for not arguing that the prosecutor's actions constituted vindictive or selective prosecution (Claim 4h). And, the State argues, because the Texas abuse of the writ doctrine would prohibit Sinyard from exhausting those claims now, they are procedurally defaulted absent a showing of cause and prejudice, which Sinyard does not make.

To obtain federal habeas relief, a petitioner must first fully exhaust state remedies. *See* 28 U.S.C. § 2254(b). "To comply with the exhaustion requirement, a petitioner must 'fairly present his legal claim to the highest state court in a procedurally proper manner.'" *Arteaga v. Lumpkin*, 2022 WL 3702263, at *2 (S.D. Tex. Aug. 25, 2022) (citing *Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015)). The federal claim "must be the substantial equivalent of the claim brought before the State court." *Young v. Davis*, 835 F.3d 520, 525 (5th Cir. 2016) (cleaned up). "The exhaustion requirement is not satisfied if the prisoner presents new legal theories or factual claims in his federal habeas petition." *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (citing *Anderson v. Harless*, 459 U.S. 4, 6-7 (1982); *Vela v. Estelle*, 708 F.2d 954, 958 (5th Cir. 1983)). "It is not enough that all the

facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (internal citations omitted). "Rather, the petitioner must afford the state court a 'fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004) (quoting *Anderson*, 459 U.S. at 6).

Thus, "to exhaust a claim in Texas, a petitioner must present the claim in a procedurally proper manner to the state's highest court of criminal jurisdiction—[the CCA]—by taking one of these paths: (1) the petitioner may file a direct appeal followed, if necessary, by a petition for discretionary review in the [CCA]; or (2) he may petition for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is transmitted to the [CCA] once the trial court determines whether findings are necessary." *Arteaga*, 2022 WL 3702263, at *3 (citing TEX. CODE CRIM. PROC. art. 11.07 § 3); *Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004)) ("Habeas petitioners must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings.").

Here, if the claim that Sinyard raises in claim 2 of his federal application is a standalone prosecutorial misconduct claim centered on the victim's testimony, Sinyard did not raise this claim to the CCA, and it is not exhausted. *See* ECF No. 11-34 at 185-239 (state habeas application); ECF No. 11-17 at 9-22 (PDR).

And the same is true of Sinyard's claims that his trial attorney was ineffective for not telling him about a 15-year plea offer and that his appellate counsel was ineffective for failing to argue selective or vindictive prosecution—neither of those claims were raised to the CCA, and they are not exhausted. *See* ECF No. 11-34 at 185-239; ECF No. 11-17 at 9-22.

Related to exhaustion is the concept of procedural default. "[I]f the prisoner fails to exhaust available state remedies, and the state court to which the prisoner would have to present his claims in order to exhaust them would find the claims procedurally barred, the prisoner has defaulted those claims." *Coleman v. Dretke,* 395 F.3d 216, 220 (5th Cir. 2004) (citing *Nobles,* 127 F.3d at 420). Texas state law "prohibits Texas courts from considering the merits of, or granting relief based on, a subsequent writ application filed after the final disposition of the inmate's first application unless he demonstrates cause or actual innocence." *Sefiane v. Director,* TDCJ-CID, 2022 WL 3999851, at *6 (E.D. Tex. July 18, 2022), *rec. accepted* 2022 WL 3974998 (E.D. Tex. Aug. 31, 2022) (citing TEX. CODE CRIM. PROC. art. 11.07 § 4); *Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir. 2001)) ("[T]he Texas abuse of the writ doctrine prohibits a second habeas petition, absent a showing of cause, if the petitioner urges grounds therein that could have been, but were not, raised in the first habeas petition.").

Here, because Sinyard failed to exhaust these claims for relief, and because he would be precluded from returning to the CCA to exhaust them now, they are procedurally defaulted.

When a petitioner procedurally defaults his federal claims by failing to follow applicable state procedural rules, the claims may be dismissed unless the petitioner demonstrates cause for the default and actual prejudice because of the alleged error, or that a miscarriage of justice will occur if the federal courts do not consider the claim. *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992); *Nelson v. Davis*, 952 F.3d 651, 662 (5th Cir. 2020). To show cause for the default, the petitioner "must establish that some objective factor external to the defense impeded his efforts to comply with the state procedural rule." *Sefiane*, 2022 WL 3999851, at *6 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Moore v. Roberts*, 83 F.3d 699, 704 (5th Cir. 1996)). To show prejudice, the petitioner must show that the error "worked to his actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Here, Sinyard makes no showing of cause, prejudice, or a miscarriage of justice. Thus, his claims that (1) the prosecution engaged in misconduct because the victim falsely testified that the intruder stumbled through the doorway into the house (Claim 2); (2) his trial counsel was ineffective for failing to inform him of a fifteen-year plea offer (Claim 4a); and (3) his appellate counsel was ineffective for not arguing that the prosecutor's actions constituted vindictive or selective prosecution (Claim 4h) are procedurally barred and do not support habeas relief.

B. Sinyard's sufficiency-of-the-evidence claim lacks merit.

Because Sinyard presented the remainder of his claims to the CCA, which denied them on the merits, he must overcome the Antiterrorism and Effective

Death Penalty Act of 1996's (AEDPA) relitigation bar in order to obtain relief.

Specifically, under 28 U.S.C. § 2254(d):

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004).

Absent express factual findings, a federal court may imply factual findings consistent with the state court's disposition. *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983).

And while the deference afforded by Section 2254(d) "does not require that there be an opinion from the state court explaining the state court's reasoning[,]" *Harrington v. Richter*, 562 U.S. 86, 98 (2011) (citations omitted), when the most recent state court to consider a constitutional issue provides a "reasoned opinion," a federal habeas corpus court must "review[] the specific reasons given by the state court and defer[] to those reasons if they are reasonable." *Wilson v. Sellers*, ---U.S.---, 138 S. Ct. 1188, 1191-92, 200 L.Ed.2d 530 (2018). If the opinion "does not come accompanied with those reasons," a federal court should, generally, "'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Id.* But, when no state court decision is accompanied by explanation, the habeas petitioner must show there was "no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

Sinyard claims that there was insufficient evidence to support his conviction (Claim 1). Specifically, he argues the evidence failed to support a finding that he had the intent to commit theft while in the course of committing a burglary. When addressing a sufficiency-of-the-evidence claim, a court must view the evidence "in the light most favorable to the prosecution to determine whether 'any rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Norris v. Davis*, 826 F.3d 821, 833 (5th Cir. 2016) (quoting *Hughes v. Johnson*, 191 F.3d 607, 619 (5th Cir. 1999)); *see also Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (the proper inquiry is whether the record evidence at trial could reasonably support the finding of guilt beyond a reasonable doubt). "The credibility of the witnesses and the weight of the evidence is the exclusive province of the jury." *Hebert v. Rogers*, 890 F.3d 213, 225 (5th Cir. 2018) (quoting *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)). Any credibility determinations and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (citing *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999)). All factual determinations are presumed correct, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The Tenth Circuit Court of Appeals of Texas issued "the last related state-court decision" rejecting Sinyard's insufficiency-of-the-evidence claim that provides a rationale for denying it; so, it is assumed that the CCA adopted the same reasoning. *See*, *e.g.*, *Wilson*, 138 S. Ct. at 1192. The Tenth Circuit found:

> Section 30.02 of the Texas Penal Code provides, as relevant to this case, that a person commits an offense if, without the effective consent of the owner, he enters a habitation, with intent to commit theft. *See* TEX. PEN. CODE ANN. § 30.02(a)(1) (West 2011). "Enter" means to intrude any part of the body, or any physical object connected with the body. *Id.* (b).
>
> Sinyard contends the evidence did not show he "entered" Lucas's house because, he asserts, the record reflects Lucas shot through the

door before Sinyard opened it. Sinyard contends that: 1) Lucas told the 9-1-1 operator that as Sinyard started opening the back door, Lucas started shooting; 2) when law enforcement interviewed him after he was retrieved from his hiding place, Sinyard stated that while he was banging on the back door, someone started shooting; 3) there was no damage to the receiver plate for the deadbolt, if it was engaged; and 4) the damage to the door and sheetrock beside the door indicate the door was shut when Lucas began shooting.

However, the evidence shows that Lucas also told the 9-1-1 operator that Sinyard "came in" and Lucas started shooting. Lucas testified that the back door opened forcefully and a person stumbled in sideways. The intruder's upper body and left foot were in the house, and she started shooting. He did not leave right away but used the door as a shield and pulled it closed. Lucas further stated that the deadbolt for the door was engaged, but the pin in the bottom of the other door of the two French doors may not have been engaged in the floor. Thus, she explained, without the bottom pin engaged, there would be a lot of flex in the doors. Also, she and Sgt. Fitzgerald, an investigator with the Ellis County Sheriff's Department, noted that the receiver plate in the second door had moved some. Through photographs admitted into evidence, Sgt. Fitzgerald noted that the outside of the door was also damaged, indicating that it was open during the shooting.

The jury was not required to believe Sinyard's statements to law enforcement that he was shot before the door was opened. And, viewing all of the evidence in the light most favorable to the verdict, we determine any rational trier of fact could have found that Sinyard entered Lucas's house beyond a reasonable doubt.

Sinyard also contends the evidence was insufficient to prove that he had the intent to commit theft. Although not immediately, Sinyard left Lucas's home and Lucas started shooting at him. He hid in a crawl space in his sister's home next door after taking off in his bloody clothes. When retrieved by law enforcement after the incident, Sinyard offered an explanation as to why he was at Lucas's home— that he was looking for his dog. Lucas testified that the dog roams the area but has never been taken into her house. A dog was located in the bathroom of the house where Sinyard was located. Further, two prior burglaries of a habitation convictions for Sinyard were entered into evidence as support for the element of intent. *See* TEX. R. EVID. 404(b)(2) ( . . . "evidence may be admissible for another purpose, such as proving . . . intent. . . ").

> Based on this record, we determine that any rational trier of fact could reasonably find beyond a reasonable doubt that Sinyard entered Lucas's home with intent to commit theft. *See id.*; *see also Gear v. State*, 340 S.W.3d 743, 747-48 (Tex. Crim. App. 2011) (evidence can be sufficient to prove intent to commit theft where a defendant attempts to enter a home, flees when interrupted by the homeowner, and gives conflicting or implausible explanations for his actions).

ECF No. 11-3 at 4-6.

The jury, as the finder of fact, was charged with assessing the credibility of the witnesses and choosing among reasonable constructions of the evidence. *See United States v. Green*, 180 F.3d 216, 220 (5th Cir. 1999); *United States v. Monroe*, 178 F.3d 304, 307 (5th Cir. 1999). And on federal habeas review, "[a] federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts." *Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985). Instead, "[t]he habeas corpus statute obligates federal judges to respect credibility determinations made by the trier of fact." *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993). Here, the jury believed the victim.

As the state court opinion shows, given that credibility determination, and given Sinyard's prior burglary convictions, a rational trier of fact could find beyond a reasonable doubt that Sinyard entered the victim's home with the intent to commit theft. Sinyard has therefore failed to show that the state court's rejection of his insufficiency-of-the-evidence claim resulted in a decision that was contrary to, or that involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or that was based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

### C. Sinyard fails to show that the CCA's denial of his trial-court-error claim was unreasonable.

In his third claim for relief, Sinyard claims that the trial court erred by overruling his counsel's Rule 404(b) objection[1] and allowing evidence of two of his prior burglary convictions during the guilt/innocence phase, depriving him of a fair trial. *See* ECF No. 3 at 11.

Habeas corpus is not available to challenge the state courts' application of state-law evidentiary rules. *Lucio v. Lumpkin*, 987 F.3d 451, 472 (5th Cir.), *cert. denied*, 142 S. Ct. 404 (2021). But, "when a state court admits evidence that is 'so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.'" *Dawson v. Delaware*, 503 U.S. 159, 179 (1992) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)).

The Tenth Circuit Court of Appeals of Texas issued the last reasoned opinion rejecting this claim. Its reasoning was as follows:

> One of Sinyard's defensive theories at trial was that he did not intend to commit theft—he was simply looking for his dog. Sinyard hinted during *voir dire* and opening that there was a problem with the State's ability to prove the element of intent. He fully raised the "looking for my dog" theory on re-cross examination of Lucas . . .

[1] Under Texas Rule of Evidence 404(b), evidence of a crime, wrong, or other act is not admissible to prove a person's character to show that a person acted in conformity with that character on a particular occasion. But it is admissible for other purposes, like proving intent.

> Accordingly, Sinyard placed his intent at issue and thus, the trial court did not abuse its discretion in admitting the two prior convictions over Sinyard's Rule 404(b) objection . . .
>
> Sinyard's prior convictions for burglary of a habitation seven years prior to his trial strengthens the inference that he entered Lucas's home with the intent to commit theft, especially in light of Sinyard's defense that he was only looking for his dog. Thus, the evidence was necessary and probative. The presentation of the convictions did not consume an inordinate amount of time and was not repetitive of evidence already admitted. The jury was instructed that it could not consider the evidence for any purpose other than to determine Sinyard's intent. While the admission of prior convictions will always be prejudicial, there was nothing here that suggested the jury would be distracted from the main issue or use the evidence for improper purposes.

ECF No. 11-3 at 8-9.

The state court's analysis and rejection of this claim was reasonable. Sinyard fails to show that the state court erred in admitting his prior convictions under state law. But, more importantly, he fails to show how evidence of his convictions unduly prejudiced him in the constitutional sense. The state court's rejection of this claim did not result in a decision that was contrary to, or that involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that was based on an unreasonable determination of facts in light of the record.

### D. Sinyard fails to show that that the CCA's denial of his ineffective assistance of counsel claims was unreasonable.

In claims 4b-4f, Sinyard argues that his trial counsel was ineffective for various reasons. To succeed on an ineffective assistance of counsel claim, a

petitioner must show "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 689. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Murray v. Maggio*, 736 F.2d 279, 281-82 (5th Cir. 1984); *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).

Additionally, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The petitioner must "affirmatively prove," not just allege, prejudice. *Id.* at 693. If he fails to prove prejudice, the court need not address counsel's performance. *Id.* at 697.

And, on federal habeas review, the Court's analysis of ineffective assistance of counsel claims is even more deferential. When the state court has adjudicated the claim on the merits, a federal court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *See Woods v. Etherton*, 578 U.S. 113 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether

15

defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101.

### 1. *Trial Counsel Claims (Claims 4b through 4f)*

Sinyard claims his trial counsel was ineffective for not objecting that his sentence was disproportionate to the crime. ECF No. 3 at 12. The Supreme Court, however, has specifically rejected the principle that the Eighth Amendment contains a proportionality guarantee. *Harmelin v. Michigan*, 501 U.S. 957 (1991). If a sentence is within the statutory limits, a federal court will not upset the terms of that sentence unless it is so disproportionate to the offense as to be completely arbitrary and shocking. *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975); *see also Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir. 1996).

In rejecting this claim, the state habeas court—in findings adopted by the CCA—noted:

> Applicant's sentence of 99 years was within the range of punishment for a first-degree felony. Applicant argues that the sentence was outside the range of punishment because a burglary is a second degree offense. But his offense was enhanced to a first degree felony by a prior conviction. Applicant's sentence was not disproportionate because he broke into a home when the owner was present, hid from the police by crawling into the wall of his home, and had five convictions for burglary of a vehicle and four convictions for burglary. His lengthy criminal history for the same offense, the danger of the crime, and his disregard for the law justified a lengthy sentence.

ECF No. 11-34 at 262 (internal punctuation and format altered).

The CCA's rejection of this claim was not an unreasonable application of *Strickland*. Sinyard's sentence was within the statutory limits, and the

circumstances of the crime and his history of similar crimes justified the lengthy sentence. Thus, an objection that the sentence was "grossly disproportionate to the offense" would have been meritless, and counsel is not required to make meritless objections. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998).

Next, Sinyard claims that his trial counsel should have objected to the prosecutor's comment in closing argument that his friends and family were "enabling." ECF No. 3 at 12. But the prosecution did not say that during its closing argument. Thus, the factual predicate of this claim is erroneous, and Sinyard is not entitled to habeas relief in relation to it.

Sinyard also complains that his attorney should have objected to the fact that officers entered his sister's home—the home where he was hiding and where the officers collected evidence and arrested him—without a warrant. ECF No. 3 at 12. The CCA, adopting the findings of the state habeas court, rejected this claim. The state habeas court specifically found that the community caretaker exception to the Fourth Amendment applied because the officers were "following a blood trail following a shooting and were concerned that the suspect was injured or deceased inside the home he fled to." ECF No. 11-34 at 265. Further, the state habeas court noted that the police obtained consent from the homeowner, Sinyard's sister, to enter the home. ECF No. 11-34 at 264. Thus, an objection to the search and the evidence it uncovered would have lacked merit.

Sinyard fails to show that the state court's determination of this issue was unreasonable. It is established that police officers do not need a warrant when the

homeowner gives consent, which is what happened here. *Fernandez v. California,* 571 U.S. 292, 298 (2014).[2] Thus, there was no reason for Sinyard's counsel to object to the search, and the CCA's rejection of this claim was not an unreasonable application of *Strickland.*

Next, Sinyard claims that his trial counsel was ineffective for not objecting to the prosecution's statement during its opening argument that: "At the end of this case, we feel confident that you will find the defendant guilty because that's the only verdict that a reasonable juror would be able to find." ECF No. 3 at 12. But, as the state habeas court noted, the Texas Code of Criminal Procedure allows an opening statement regarding "the nature of the accusation and the facts which are expected to be proved by the State in support thereof." TEX. CODE CRIM. PROC. art. 36.01(a)(3). The contested statement simply summarized the anticipated evidence and concluded that a guilty verdict should flow from it. There was therefore no reason for an objection. Further, Sinyard fails to show prejudice. As the state habeas court noted, "hearing that the State wished the jury to convict in the case it brought to trial is commonsense information that would not be harmful." ECF No.

---

[2] Even if Sinyard jointly occupied the home, his sister's consent alone still supported the warrantless search because there is no indication that Sinyard expressly refused the search in the presence of the officers—indeed, he apparently was hiding in the house at the time. *See id.* at 300-301 (discussing *Georgia v. Randolph,* 547 U.S. 103 (2006), which held that a co-owner's consent is not enough to justify a warrantless search if the other co-owner is present and expressly objects to the search).

11-34 at 266. Sinyard fails to show that the CCA's rejection of this claim was an unreasonable application of *Strickland*.

Sinyard claims that his counsel should have objected to the "vindictive prosecution," arguing that the State only prosecuted him because of his criminal history. *See* ECF No. 3 at 12. The CCA rejected this claim because "[n]othing supports Applicant's claim of vindictive prosecution." ECF No. 11-34 at 267. Sinyard similarly fails to point to anything supporting this claim here. Therefore, any objection of the basis of "vindictive prosecution" would have been meritless, and the CCA's rejection of this claim was not an unreasonable application of *Strickland*.

Next, Sinyard claims that his trial counsel was ineffective for not objecting to some of his prior burglary convictions, arguing that the State only introduced that evidence to demean his character. ECF No. 3 at 12. This claim fails because, as the CCA found, and as is discussed above, "[t]he prior convictions were admissible as evidence of intent under Rule 404(b)." ECF No. 11-34 at 267-68. Thus, an objection would have been futile. The CCA's rejection of this claim was not an unreasonable application of *Strickland*.

### 2. *Appellate Counsel Claims (Claims 4g and 4i)*

In claims 4g and 4i, Sinyard argues that his appellate counsel was ineffective for (1) failing to argue that there was no evidence to support the jury's finding that he entered the habitation with the intent to commit theft and (2) failing to argue

that the trial court erred in admitting evidence that had been tampered with—specifically, the victim's door. ECF No. 3 at 12.

A defendant is constitutionally entitled to effective assistance of counsel on appeal where the appeal is a matter of right under state law. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The proper standard for evaluating a claim that appellate counsel was ineffective is the two-prong standard set forth in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *see also Blanton v. Quarterman*, 543 F.3d 230, 240 (5th Cir. 2008) ("In reviewing a claim alleging ineffective assistance of appellate counsel we apply the traditional *Strickland* standard.").

As it relates to the failure-to-present-a-no-evidence-argument-on-appeal claim, the state habeas court found:

> Counsel raised a claim of insufficient evidence, which was rejected by the court of appeals. The court of appeals would not have reversed on the stricter claim of no-evidence if they did not reverse on insufficie[n]cy.
>
> The record was not completely devoid of evidentiary support for the conviction because the home owner testified that she witnessed Applicant force open her back door and partially enter her home.
>
> Applicant's claims that the home owner's testimony was contradictory and evidence was circumstantial does not affect a no-evidence claim.

ECF No. 11-34 at 261. (punctuation and format altered). Sinyard fails to establish that the state habeas court's analysis of this issue was unreasonable. Because a no-evidence argument on appeal would have been meritless, Sinyard cannot show that he was prejudiced by his appellate counsel's failure to bring one. The CCA's rejection of this claim was not an unreasonable application of *Strickland*.

Finally, regarding Sinyard's claim that his appellate attorney should have complained about the admission into evidence of the damaged door from the victim's home, the CCA found that there was no evidence in the record that the door had been tampered with, that counsel was not ineffective for failing to complain about admissible evidence, and that Sinyard's complaints went to the sufficiency—not the admissibility—of the evidence. ECF No. 11-34 at 268-69.

Sinyard fails to show that the CCA's analysis or conclusions were unreasonable. He has therefore failed to establish that the CCA's rejection of this claim was an unreasonable application of *Strickland*.

## Recommendation

For the foregoing reasons, the Court should DENY Sinyard's § 2254 petition.

Signed April 28, 2023.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

21

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996)